NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL PERRY,<br>　　　　Plaintiff,<br><br>　　v.<br><br>STATE TROOPER BRANDON A.<br>BRUNS, COLONEL RICK FUENTES,<br>OFFICER WALTER RICHMOND,<br>PROSPECT PARK POLICE<br>DEPARTMENT, CHIEF OF POLICE<br>CHARBEL ADIE, BOROUGH OF<br>PROSPECT PARK, OLEN PAJIK, JOHN<br>DOES NOS 1-10, STATE OF NEW<br>JERSEY THROUGH ITS AGENCY THE<br>STATE POLICE,<br>　　　　Defendants. | : : : : : : : : : : : : : : : : : | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 11-CV-2840 (DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This motion comes before the Court upon three motions to dismiss.  Plaintiff filed an

initial complaint on May 18, 2011 (ECF No. 1).  Defendants Prospect Park Police Department,

Chief of Police Charbel Adie and the Borough of Prospect Park (hereinafter collectively, the

"Prospect Park Defendants") filed a first Motion to Dismiss on June 27, 2011 (ECF No. 3).

Defendants Colonel Rick Fuentes and the State of New Jersey through its agency the State Police

(hereinafter, the "State Defendants") filed a second Motion to Dismiss on July 18, 2011.  (ECF

No. 8).  On August 2, 2011, Magistrate Judge Dickson granted Plaintiff's Motion to Amend the

Complaint.  (ECF No. 9).  On August 17, 2011, the Prospect Park Defendants filed a third

Motion to Dismiss.  (ECF No. 11).  Plaintiff filed a Response to all three Motions to Dismiss on

September 20, 2011.  (ECF No. 17).  On November 1, 2011, Defendant Richmond filed an

Answer to the Amended Complaint denying the majority of Plaintiff's allegations and asserting

affirmative defenses including, but not limited to, failure to state a claim.  (ECF No. 24.)[1]

## I.   BACKGROUND

Plaintiff's Amended Complaint alleges state and federal Constitutional violations, civil

rights violations under federal statutes 42 U.S.C. § 1983 and § 1985, state and federal

Racketeering Influenced Corrupt Organization Act (hereinafter, "RICO") violations and

violations of 18 U.S.C.A. § 1030.  Plaintiff avers that Defendants conspired to deprive him of his

civil rights.  (Pl.'s Am. Compl. ¶¶ 28-32.)

The conspiracy, Plaintiff contends, originated with Defendants and Officers State Trooper

Brandon A. Bruns, Officer Walter Richmond and Olen Pajik (hereinafter collectively,

"Defendant Officers").  (Id. at ¶ 32.)  Defendant Officers worked for a company owned by

Plaintiff, Pentaboro, Inc. at various points between 2005 and 2008.  (Id. at ¶¶ 15-7.)  Pentaboro,

Inc. was in the business of providing personal security detail to various clients.  (Id. at ¶ 14.)

Plaintiff would compensate Bruns, Richmond and Pajik for their employment "by check

and cash" and by alternative means "such as making car payments for employees, by paying for

cell phone services, etc."  (Id. at ¶ 18.)  Alternative compensation specifically included

subleasing a Lincoln Mark LT (hereinafter, "Lincoln vehicle," alternatively the, "vehicle") from

Pajik because Pajik entered into a lease, but later decided he no longer wanted the vehicle.  (Id. at

¶ 19.)  Under the agreement Plaintiff would pay the remaining terms of the lease and take

---

[1]Neither Bruns nor Pajik have appeared in this case, and the Clerk made an entry of
default against each Defendant on September 15 and September 21, 2011, respectively.  Plaintiff
has not moved for a default judgment.

possession of the vehicle.  Id.  Another alternative compensation plan involved Brun's assignment of a cell phone contract to Plaintiff after he decided he no longer wanted the phone. (Id. at 20.)  Similarly, Plaintiff agreed to meet the terms of the contract and take possession of the phone.  Id.

In September 2008, Plaintiff became a partner in the planning and development of a nightclub named Mansion.  (Id. at ¶ 21.)  Bruns made a $10,000 contribution to Plaintiff and his business partner to support the venture.  (Id. at ¶ 22.)  In exchange for his contribution, Bruns received the right to place an Automatic Teller Machine within Mansion, and the exclusive rights to "work the door" and receive compensation for such services.  Id.

Plaintiff states, in November of 2008, that he began having domestic problems with his wife.  (Id. at ¶ 23.)  Ultimately, Plaintiff's wife abandoned Plaintiff and their son, and thereafter Plaintiff moved to Clearwater Beach, Florida.  (Id. ¶ 25.)  Upon doing so, Plaintiff stopped maintaining Pentaboro, Inc. and Mansion.  Id.  After some time, Plaintiff and his son moved to Florence, Arizona.  (Id. at ¶ 27.)  On or about September or October of 2009, Bruns and Richmond, infuriated by Plaintiff's move and termination of Pentaboro, Inc. and any involvement in the Mansion project, formed an enterprise with the agreed purpose of tracking down Plaintiff in order to cause him harm.  (Id. at ¶ 28.)

Plaintiff alleges that Bruns and Richmond, "through their employment at their respective police departments," were able to access the National Crime Index Center (hereinafter, "NCIC") and, at separate times used it to perform searches in an attempt to locate Plaintiff.  (Id. at ¶ 29.) Plaintiff argues these searches contravene federal law, specifically 18 U.S.C.A. § 1030.  Id.

Next, Plaintiff avers, Defendant Officers falsely reported the Lincoln MT vehicle as

stolen to Defendant Prospect Park Police Department.  (Id. at ¶ 32.)  Plaintiff pleads no further

facts as to what resulted from that allegedly false report in New Jersey.  Defendant Officers then

allegedly informed the Arizona law enforcement authorities that the stolen vehicle was in their

jurisdiction and that Plaintiff had stolen it, and advised them to make efforts to recover the

vehicle.  (Id. at ¶ 35.)  Plaintiff states that the Arizona authorities, relying on Defendant Officers'

information, arrived at the residence of Plaintiff's friend, where they thought Plaintiff was

staying, with guns drawn in anticipation of apprehending Plaintiff and recovering the stolen

Lincoln vehicle.  (Id. at ¶ 36.)  Upon recognition that Plaintiff was not at that home, they

responded to Plaintiff's home in Arizona, again with guns drawn in anticipation of apprehending

the Lincoln vehicle.  (Id. at ¶ 37.)  Plaintiff states they "seized" the vehicle, but upon further

investigation and the questioning of Plaintiff, seemingly without leaving the premises,  the

Arizona authorities became aware that the vehicle was not stolen as alleged by Defendant

Officers.  Id.  The Arizona authorities never filed formal charges or initiated prosecution of

Plaintiff in connection with the vehicle.  Id.

        Plaintiff alleges Bruns "devised another scheme" whereby he would falsely report that

Bruns' identity was "stolen" by Plaintiff.  (Id. at ¶ 39.)  Plaintiff states that Bruns went to the

South Hackensack Police Department and utilized the cell phone contract which he had assigned

to Plaintiff as evidence of the alleged identity theft.[2]  Id.  The County decided not proceed with

Bruns' claim for lack of foundation and did not file formal charges.  (Id. at ¶ 40.)

        Plaintiff contends Bruns' final scheme involved Plaintiff's ex-wife, with whom Bruns

conspired to file kidnapping charges against Plaintiff.  (Id. at ¶ 42.)  Plaintiff then states that the

---

        [2]The South Hackensack Police Department is not a named Defendant in this matter.

4

charges, the "exact nature of which" are "unknown," "were filed in New Jersey whereby the Judge dismissed the same." (Id. at ¶ 42.) Plaintiff further contends that "the record," which is not further described, revealed that "[Plaintiff's ex wife] and her attorney had obtained information about Plaintiff via Bruns." Id. Plaintiff contends that Bruns filed the same charges in Arizona by flying to the state with the Plaintiff's ex wife. (Id. at ¶ 44.) Upon hearing about the charges, Plaintiff returned to New Jersey on or about November 2009. (Id. at ¶ 45.) No further information about the Arizona charges is contained in Plaintiff's Complaint.

Plaintiff seeks punitive and compensatory damages as well as attorneys' fees and any other relief that this Court deems equitable and just for violation of the aforementioned statutes. Plaintiff further states that injury includes "loss of confidence in and feelings of betrayal by the justice system, shock, and emotional scarring . . . " as well as "wantonly inflicted distress." (Id. at ¶¶ 62, 70.)

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss, the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the  Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). The Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, when their truth is assumed, those factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.  Plaintiff's

obligation "requires more than labels and conclusions." Id. at 545.  To survive a motion to dismiss, the complaint must state a plausible claim.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." M & M Stone Co. v. Pa., 388 Fed.Appx. 156, 162 (3d Cir. 2010).

III.   **DISCUSSION**

1.   **§ 1983 Claim**

Under § 1983, citizens are afforded a cause of action for deprivation of any rights, privileges or immunities secured by the Constitution.  Though broad in its base, this cause of action is subject to several far reaching limitations.  Defendants point to pertinent and applicable limitations in their Motions to Dismiss.  Firstly, under § 1983, the state and its officials are immune from liability when acting within the scope of their official authority.  See Will v. Michigan, 491 U.S. 58, 71 (1989).  In the context of municipal liability, a claim will not succeed on a respondeat superior theory under § 1983.  Monell v. Dep't. of Soc. Serv. of the City of N.Y., 436 U.S. 658, 691 (1978).  A municipality will be liable in the limited circumstance where execution of a government policy or custom actually inflicts the injury.  Id. at 694.  Moreover, a supervisor will not automatically incur liability for his subordinates' actions.  Id.  For liability of the employer to attach, the supervisor must be personally involved in the subordinate's wrongful conduct, or the Plaintiff must show that a failure of the supervisor to properly train subordinates occurred and was the actual cause of the Constitutional violation.  City of Canton v. Harris, 489

U.S. 378, 388 (1989).

State immunity applies to the State Defendants for actions performed within the scope of official authority. Under Monell, the Borough of Prospect Park and the Prospect Park Police Department are considered municipalities, and Chief of Police CharbelAdie is considered a municipal official. Monell, 436 U.S. at 691 n. 55 (1978). These parties are immune from liability because Plaintiff provides no facts leading to even an inference that a municipal policy or custom inflicted injury. Monell, 436 U.S. at 694. Plaintiff pleads "damage in the form of [C]onstitutional deprivation" of Plaintiff's due process and attributes the violations to the Kidnapping, Theft of Vehicle and Theft of Identity allegations. Plaintiff fails to show, however, how liability could legally attach to each or any Defendants under § 1983. Plaintiff's failure to show grounds for entitlement to relief from Defendants is fatal to the Complaint.

Plaintiff clearly alleges that Richmond and Bruns were pursuing a personal vendetta against Plaintiff for terminating a business venture in which they were involved. Plaintiff pairs these claims with the actions of State and Prospect Park Defendants as a violation of Plaintiff's Constitutional rights in terms of the Theft of Vehicle allegations. Plaintiff concludes that a violation was committed as a result of these allegations, without claiming that the Prospect Park Defendants took even an initial step to respond to the false report. Regarding the other allegations, Plaintiff names neither the Arizona authorities nor South Hackensack Police Department as Defendants. Actions of the Defendant Officers alone are not sufficient to persuade this Court that Plaintiff has a plausible claim for relief related to the Theft of Identity or Kidnapping allegations.

Plaintiff fails to show that Defendants could be held liable under § 1983, therefore, these

7

claims are denied.

      **2.**      **New Jersey State Law Claims**

      The New Jersey Constitution does not prohibit liability based on principles of respondeat superior.  <u>Gibson v. Superintendent of N.J. Depart. of Law & Pub. Safety - Div. of State Police</u>, No. 2-5470, 2009 WL 900854, at *4 (D.N.J. Mar. 31, 2009).  Courts in this Circuit have upheld this rule, despite the corollary prohibition on the same in a case claiming violations of federal constitutional rights, as discussed previously.  <u>Id.</u>  The <u>Gibson</u> Court employed common law rules to determine whether respondeat superior liability attached to the principal, New Jersey Transit Authority, for the employees, New Jersey State Troopers.  <u>Gibson</u>, 2009 WL 900854, at *5.  The Court framed the inquiry as whether the employees' wrongful acts were committed within the scope of the employment or agency relationship.  <u>Id.</u>

      Plaintiff merely labels the collective actions of Defendants with legal conclusions.  The facts presented do not state a plausible basis for Defendants' liability under the doctrine of respondeat superior.  Filing false reports falls outside of the scope of Defendant Officer's employment.  They are filing as citizens, not under the auspices of any authority granted by their Officer positions.  Therefore, liability will not attach to superiors or entities, namely the state through its agency the State Police, the Borough of Prospect Park, the Prospect Park Police Department, Colonel Rick Fuentes and Chief of Police Charbel Adie, as a result of the Defendant Officers' acts.  Without support for an inference that the Prospect Park or State Defendants conducted themselves wrongfully, beyond mere investigation and disposition of false reports filed, Plaintiff has failed to provide a plausible basis upon which this Court could find a violation.  Consequently, Plaintiff fails to state a claim for relief under the New Jersey

Constitution.

**3.     Conspiracy Claims**

Under § 1985, which grants citizens a cause of action for a conspiracy designed and intended to deny and deprive Plaintiff of their Constitutional rights, Plaintiff must prove: 1) a conspiracy by the Defendants; 2) that the conspiracy was designed to deprive Plaintiff of equal protection of the law; 3) that an overt act was committed in furtherance of the conspiracy; 4) that an injury to person or property or a deprivation of a right or privilege of a citizen resulted; and, 5) that Defendants actions were motivated by an invidiously discriminatory class-based animus. Faulker v. Reeves, No. 91-1880, 1992 WL 96286, at *11 (E.D. Pa. Apr. 23, 2992); see also, United Brotherhood of Carpenters and Joiners of Amer. Local 610 v. Scott, 463 U.S. 825, 828-9 (1971).

Without reaching the elements of this cause of action, Plaintiff seems to state that Defendant Officers and State and Prospect Park Defendants entered into a conspiracy, the design of which was to deprive Plaintiff of the equal protection of the law.  Nowhere does Plaintiff allege, however, that either the State or Prospect Park Defendants entered into an agreement with Defendant Officers.  Without demonstration that this Court could plausibly find that a conspiracy was formed, Plaintiffs' claim cannot stand.  Moreover, as right to relief under the statute requires proof of all five elements, Plaintiff's claim fails.  For instance, Plaintiff pleads no facts showing that Defendants' motivation arose from a class-based animus, as required in the statute.  Plaintiff fails to state a claim for relief under § 1985.

**4.     RICO Claims**

State and Federal RICO claims depend on proof of participation in a predicate act that

constitutes "racketeering activity."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239

(1989).  Crimes are specifically enumerated in the Federal statute at 18 U.S.C. 1961(1) and State

statute at N.J.S.A. 2C:41-1(a).  Plaintiff suggests, in pleading under the Federal RICO statute,

that Defendants committed "numerous overt and predicate illegal and fraudulent acts."  (Pl.'s

Am. Compl. ¶ 77.)  Then, Plaintiff names two predicate acts included on this elusive, long list:

(1) material misrepresentation; and, (2) omissions designed to mislead government agencies and

perpetuate fraudulent prosecutions.  (Id. at ¶¶ 77-8.)  In the Count alleging violations of the State

RICO statute, Plaintiff claims: (1) multiple instances of official misconduct; (2) multiple

instances of falsifying or tampering with public records; (3) multiple instances of purposely or

knowingly, without authorization, accessing data; (4)  multiple instances of purposely or

knowingly, without authorization, accessing data and knowingly or recklessly disclosing the

same; and, (5) other acts contrary to the laws of the State of New Jersey and the United States

still subject to ongoing discovery.  (Id. at ¶ 79.)

    Even viewing Plaintiff's allegations as true and considering them in a most favorable

light, this Court cannot find that Defendants' acts, as stated by Plaintiff, constitute "racketeering

activity."   Claims under § 1962(d) and (c) each require proof of engagement in "racketeering

activity."   Instead of substantiating Plaintiff's claim of the applicability of the predicate acts

enumerated in his Complaint, Plaintiff attempts to sidestep the requirement.  Plaintiff states that

Defendants "agreed to the objective of 18 U.S.C. § 1962(d) . . . by conspiring to violate §

1962(c)."[3]

---

[3]Plaintiff alternatively states that Defendants "[violated] 18 U.S.C. § 1962(d) by
conspiring to violate 18 U.S.C. § 1962(c)."  (Pl.'s Am. Compl. ¶ 78.)  In any event, the same
analysis employed herein by this Court applies.

Plaintiff properly notes that the Federal and State RICO statutes are intended to prevent an overall pattern of racketeering activity.  However, Plaintiff fails to show a "pattern" or "multiple instances" of activity under the statute.  Plaintiff does not name the Arizona authorities or South Hackensack Police Department as Defendants, and any actions on their part that Plaintiff alludes to will not be attributed to any named Defendants in this matter.  The Complaint does not sufficiently describe how the Theft of Identity and Kidnapping allegations, on the basis of Officer Defendants' conduct alone, could constitute predicate acts.  In regards to the Theft of Vehicle allegations, this Court is left with only one allegation of "racketeering activity," which explicitly fails to reach the "pattern" standard required by § 1961(5), or namely, two or more acts.  These claims are, therefore, dismissed.

**5.      18 U.S.C. § 1030**

Plaintiff alleges that Defendant Officer's use of the NCIC without authorization or in excess of authorized access, constitutes a violation of 18 U.S.C. § 1030.  This statute prohibits fraud and related activity in connection with computers.  NCIC is a database consisting of seven property files and twelve persons files for organizing and categorizing criminal records and filings.[4]  Criminal justice agencies enter and view records and filings on NCIC, all of which are accessible to law enforcement agencies nationwide.

The limited facts alleged by Plaintiff surrounding Officer Defendants' use of NCIC does not persuade this Court that Plaintiff could plausibly prove entitlement to recovery under the statute.  Moreover, Plaintiff does not specifically describe how any or each Defendant used NCIC

---

[4]National Crime Information Center, FBI (Accessed February 2, 2012), http://www.fbi.gov/about-us/cjis/ncic.

11

in violation of the statute.  Police use NCIC in the regular course of investigating suspected criminal activity.  Plaintiff's formulaic recitation of some, but not all, elements involved in violating 18 U.S.C. § 1030 does not raise an inference that Plaintiff could prove grounds for relief.  Plaintiff does not specifically describe acts taken by any Defendants contravening any of the lengthy, clearly defined provisions of 18 U.S.C. § 1030.  Merely assuming that the NCIC database was used is not enough to raise Plaintiff's right to relief above a speculative level.

IV.   **CONCLUSION**

     For the foregoing reasons expressed herein, Defendants Motions to Dismiss Plaintiff's Complaint are **granted**.


                                        S/ Dennis M. Cavanaugh
                                        Dennis M. Cavanaugh, U.S.D.J.

Date:          February   6  ,  2012
Orig.:         Clerk
cc:            All Counsel of Record
               Joseph A. Dickon, U.S.M.J.