NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL PERRY,<br><br>          Plaintiff,<br><br>          v.<br><br>STATE OF TROOPER BRANDON A.<br>BRUNS, COLONEL RICK FUENTES,<br>OFFICER WALTER RICHMOND,<br>PROSPECT PARK POLICE DEPT.,<br>CHIEF OF POLICE CHARBEL ADIE,<br>BOROUGH OF PROSPECT PARK,<br>OLIN PAJIK, JOHN DOES NOS 1-10,<br>and THE STATE OF NEW JERSEY<br>THOUGH ITS AGENCY THE STATE<br>POLICE,<br><br>          Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 11-cv-2840 (DMC) (JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

       This matter comes before the Court upon motion by Defendant State Trooper Brandon Bruns ("Defendant Bruns") to vacate default pursuant to FED. R. CIV. P. 55(c) and to dismiss Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6). (Def.'s Mot. to Vacate Default & Dismiss Compl., Aug. 14, 2012, ECF No. 32). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendant's Motion to Vacate Default is **granted** and the Motion to Dismiss the Complaint is **granted in part** and **denied in part**.

1

## I.   B̲A̲C̲K̲G̲R̲O̲U̲N̲D̲

### 1.    Procedural History

Plaintiff Michael Perry ("Plaintiff") brought an action on May 18, 2011, against the following defendants: the New Jersey State Police; Olen Pajik ("Defendant Pajik"); State Trooper Brandon A. Bruns ("Defendant Bruns"); the Superintendent of the New Jersey State Police, Colonel Rick Fuentes ("Defendant Fuentes"); the Borough of Prospect Park; the Prospect Park Police Department; Walter Richmond, a police officer of the Borough of Prospect Park ("Defendant Richmond"); Charbel Adie, the Chief of the Prospect Park Police Department ("Defendant Adie"); and John Does 1–10, New Jersey State Troopers ("Defendants John Does"). (Pl's Compl. 2–3, May 18, 2011, ECF No. 1).

Defendants Prospect Police, Chief of Police Charbel Adie, and the Borough of Prospect Park (hereinafter collectively "Prospect Park Defendants") filed a Motion to Dismiss on June 27, 2011.   (Prospect Park Defs.' Mot. Br. 1, Jun. 27, 2011, ECF No. 3).   Defendants Fuentes and the State of New Jersey, through its agency the State Police, filed a Motion to Dismiss on July 18, 2011.   (State Defs.' Mot. Br. 1, Jul. 18, 2011, ECF No. 8).   On August 2, 2011, Magistrate Judge Dickson granted Plaintiff's Motion to Amend the Complaint.   (Order Granting Motion to Amend Compl., Aug. 2, 2011, ECF No. 9).   On August 17, 2011, the Prospect Park Defendants filed another Motion to Dismiss.   (Prospect Park Defs.' Mot. Br. 1, Aug. 17, 2011, ECF No. 11). Plaintiff filed a Response to all three Motions to Dismiss on September 20, 2011.   (Pl.'s Opp. Br. 1, Sept. 20, 2011, ECF No. 17).

On September 1, 2011, an entry of default was entered for Defendant Pajik.   (Order of Entry of Default, Sept. 1, 2011, ECF No. 12).   On September 15, 2011, an entry of default was

entered for Defendant Bruns.   (Order of Entry of Default, Sept. 15, 2011, ECF No. 16).   On

September 21, 2011, an entry of default was entered for Defendant Walton.   (Order of Entry of

Default, Sept. 21, 2011, ECF No. 18).   After appearing, Defendant Walton and Plaintiff entered

into a consent order on October 18, 2011 to vacate the default entry against Defendant Walton.

(Order to Vacate Default Entry, Oct. 18, 2011, ECF No. 21).   On November 1, 2011, Defendant

Richmond filed an answer to the Amended Complaint denying the majority of Plaintiff's

allegations and asserting affirmative defenses including, but not limited to, failure to state a claim.

(Def.'s Mot. Br. 1, Nov. 1, 2011, ECF No. 24).

On February 6, 2012, this Court granted three motions to dismiss: those of Defendants

State of New Jersey, through its agency the State Police, and Defendant Fuentes, Defendant

Prospect Park Police Department, Defendant Chief of Police Charbel Adie, and Defendant

Borough of Prospect Park.   (Opinion and Order, Feb. 6, 2012, ECF Nos. 27, 28).   Accordingly,

the remaining defendants are Defendant Bruns, Defendant Richmond, Defendant Pajik, and

Defendant John Does 1–10.

On June 11, 2012, Magistrate Judge Dickson granted a motion by Plaintiff's attorney to

withdraw.   (Order Granting Mot. to Withdraw, Jun. 11, 2012, ECF No. 30).    Presently,

Defendant Bruns argues that he secured consent from Plaintiff's former counsel to vacate the entry

of default, but counsel has since been relieved from representation of Plaintiff.   (Def.'s Mot. Br.

5).

On August 14, 2012, Defendant Bruns filed a motion to vacate the entry of default and

dismiss Plaintiff's complaint.   (Def.'s Mot. Br. 1, Aug. 14, 2012, ECF No. 32).   In support of his

motion to vacate the entry of default, Defendant Bruns asserted that he wished to avoid the

expenses of counsel considering that all other governmental agencies were no longer involved in the action.   (Def.'s Mot. Br. 1).   He also asserts that because Plaintiff's attorney had withdrawn, he believed Plaintiff might voluntarily dismiss the matter.   Plaintiff has not filed a response. Defendant Bruns' Motion to Vacate the Entry of Default and Dismiss Plaintiff's Complaint are before the Court.

### 2.    Factual Background

The claims stated in Plaintiff's Complaint originated out of dealings with Defendant Bruns, Defendant Richmond, and Defendant Pajik.   These Defendants worked for Pentaboro Inc., a company owned by Plaintiff, at various points between 2005 and 2008.   (Pl.'s Am. Compl. ¶¶ 14-20, Jul. 18, 2011, ECF No. 7-2).   Pentaboro Inc. provided personal security detail to various clients.   (Am. Compl. ¶ 14).   While Defendant Bruns is a New Jersey State Trooper and Defendant Richmond is a police officer of the Borough of Prospect Park, Defendant Pajik is not a law enforcement officer of any kind.   (Am. Compl. ¶¶ 4, 5, 9).

Plaintiff would compensate these three Defendants for their employment "by check and cash," and in kind, or by alternative means, such as, "making car payments for employees, by paying for cell phone services, etc."   (Am. Compl. ¶ 18).   These alternative compensation methods included taking over the sublease of a Lincoln Mark LT vehicle Defendant Pajik no longer wanted.   (Am. Compl. ¶ 19).   Plaintiff agreed to pay the remaining terms of the lease and take possession of the vehicle.   (Am. Compl. ¶ 19).   Another alternative compensation plan involved Defendant Bruns' assignment of a cell phone contract to Plaintiff after Bruns no longer wanted the phone.   (Am. Compl. ¶ 20).   Similarly, Plaintiff agreed to meet the terms of the contract and take possession of the phone.   (Am. Compl. ¶ 20).

4

In September 2008, Plaintiff became a partner in the planning and development of a nightclub named Mansion.   (Am. Compl. ¶ 21).   Defendant Bruns made a $10,000 contribution to Plaintiff and his business partner for the right to place an Automatic Teller Machine in Mansion, and the exclusive rights to "work the door," and receive compensation for such services.   (Am. Compl. ¶ 22).

Plaintiff states, in November of 2008, that he began having domestic problems with his wife.   (Am. Compl. ¶ 23).   Ultimately, Plaintiff's wife abandoned Plaintiff and their son, and thereafter Plaintiff moved to Clearwater Beach, Florida.   (Am. Compl. ¶ 25).   Upon doing so, Plaintiff stopped maintaining Pentaboro, Inc. and Mansion.   (Am. Compl. ¶ 25).   After some time, Plaintiff and his son moved to Florence, Arizona.   (Am. Compl. ¶ 27).   In or about September or October of 2009, Plaintiff alleges Defendant Bruns and Defendant Richmond became infuriated by Plaintiff's move and termination of business.   (Am. Compl. ¶ 28). Thereafter, Plaintiff alleges the aforementioned Defendants formed an enterprise with the agreed purpose of tracking down Plaintiff in order to cause him harm.   (Am. Compl. ¶ 28).   Plaintiff alleges that Defendants Bruns and Richmond, "through their employment at their respective police departments," were able to access the National Crime Index Center (hereinafter "NCIC") and at separate times used it to perform searches in an attempt to locate Plaintiff.   (Am. Compl. ¶ 29).

Further, Defendants Bruns, Richmond, and Pajick falsely reported the Lincoln MT vehicle as stolen to Prospect Park Police Department, and were able to locate the vehicle and Plaintiff in Arizona.   (Am. Compl. ¶ 32).   Next, Defendant Bruns or Defendant Richmond informed the Arizona law enforcement authorities that the stolen vehicle was in their jurisdiction and that Plaintiff had stolen it, and advised them to make efforts to recover the vehicle.   (Am. Compl. ¶

35).   With guns drawn in anticipation of apprehending Plaintiff and recovering the stolen Lincoln vehicle, Arizona authorities arrived at the residence of Plaintiff's friend where they thought Plaintiff was staying.   (Am. Compl. ¶ 36).   The authorities realized the address was not Plaintiff's, and obtained the correct address from Plaintiff's friend.   (Am. Compl ¶ 37). Thereafter, they arrived at Plaintiff's home, again with guns drawn.   (Am. Compl ¶ 37).   The authorities seized the vehicle, but upon further investigation and the questioning of Plaintiff, they became aware that the vehicle was not stolen as alleged.   (Am. Compl. ¶ 37).   The Arizona authorities never filed formal charges or initiated prosecution of Plaintiff in connection with the vehicle.   (Am. Compl. ¶ 37).

After the failure of the Defendants' attempt to have Plaintiff arrested, Plaintiff alleges Defendant Bruns devised another scheme whereby he would falsely report that Bruns's identity was stolen by Plaintiff.   (Am. Compl. ¶ 39).   Plaintiff states that Defendant Bruns went to the South Hackensack Police Department and utilized the cell phone contract which he had assigned to Plaintiff as evidence of the alleged identity theft.   (Am. Compl. ¶ 39).   The County decided not to proceed with Defendant Bruns' claim and did not file formal charges.   (Am. Compl. ¶ 40).

Plaintiff contends Defendant Bruns' final scheme involved Plaintiff's ex-wife, with whom Bruns conspired to file kidnapping charges against Plaintiff.   (Am. Compl. ¶ 42).   Plaintiff states that the charges were filed in New Jersey and dismissed.   (Am. Compl. ¶ 42).   Plaintiff further contends that "the record" revealed that "[Plaintiff's ex-wife] and her attorney had obtained information about Plaintiff via Bruns."   (Am. Compl. ¶ 42).   Plaintiff contends that Defendant Bruns filed the same charges in Arizona, after flying there with the Plaintiff's ex-wife.   (Am. Compl. ¶ 44).   Upon hearing about the charges, Plaintiff returned to New Jersey on or about

November 2009.   (Am. Compl. ¶ 45).

### 3.      Nature of Plaintiff's Claims

Plaintiff makes seven claims in his Amended Complaint.   He alleges violations of: (1) Section 1983 due to a violation of his constitutional rights and because Defendants were acting under the color of state law; (2) Section 1985(3) because of interference with civil rights; (3) Federal Constitutional provisions due to violations of substantive due process under the Fourteenth Amendment; (4) State Constitutional provisions because of a denial of substantive and procedural right to due process whereby Plaintiff was denied his right to be free from answering for a criminal offense, unless on the presentment or indictment of a grand jury; (5) Section 1962(d) (Racketeer Influenced and Corrupt Organizations , hereinafter, "RICO" claims) because of the acts from an enterprise formed by Defendants engaged in conspiracy to commit fraud and mislead authorities; (6) N.J.S.A. 2C:41-2, (NJ RICO) for the same reasons as (5); and (7) Section 1030, the Federal Computer Fraud and Abuse Act, because Defendants exceeded their authority to access the NCIC and thereby threatened public health or safety.   (Am. Compl. ¶¶ 52–88).   Plaintiff seeks punitive and compensatory damages as well as attorney's fees and any other relief that this Court deems equitable and just for violation of the aforementioned statutes.   (Am. Compl. ¶¶ 52–88).   Plaintiff further states that injury includes "loss of confidence in and feelings of betrayal by the justice system, shock, and emotional scarring . . . " as well as "wantonly inflicted distress." (Am. Compl. ¶¶ 52–88).

### 4.      Defendant's Motion to Vacate the Entry of Default and Dismiss

Defendant Bruns alleges that: (1) that he did not violate Section 1983 because he was not acting under the color of law, but as a private individual; (2) he did not violate Section 1985(3)

because Plaintiff is not of a protected class; (3) he did not violate Section 1962(d) (RICO) because the conduct engaged in is a listed violation of RICO; and (4) he did not violate section 1030, the Federal Computer Fraud and Abuse Act, because Plaintiff does not qualify for damages available under the statute.

## II.   LEGAL STANDARD

### A. Motion to Vacate an Entry of Default

Under the Federal Rules of Civil Procedure, Rule 55(c) states that, "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)[1]." FED. R. CIV. P. 55.   In deciding a motion under Rule 55(c) and Rule 60(b), the decision is left primarily to the discretion of the district court.   United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984) (hereinafter "U.S. Currency"); Tozer v. Charles A. Krause Mill. Co., 189 F.2d 242, 243 (3d Cir. 1951).   This Court does not favor entry of defaults or default judgments.   U.S. Currency, 728 F.2d at 194–95.   "We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits."   Id.; see also, Meducnic v. Lederer, 533 F.2d 891, 894 (3d Cir. 1976); Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).

The District Court must consider the following factors in exercising its discretion in

---

[1] FED. R. CIV. P. 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

FED. R. CIV. P 60.

granting or denying a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct; and (4) the effectiveness of alternative sanctions.   U.S. Currency, 728 F.2d at 195; Emcasco Ins. Co.v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

### B.  Motion to Dismiss

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]."   Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   Id. (internal citations omitted).   "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation."   Papasan v. Allain, 478 U.S. 265, 286 (1986).   Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level."   Twombly, 550 U.S. at 555.

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570).   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged."   Id.   "Determining whether the allegations in a complaint are 'plausible' is

a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Young v. Speziale</u>, Civ. No. 07-03129, 2009 WL 3806296, at *3 (D.N.J. Nov. 10, 2009) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief."   <u>Iqbal</u>, 129 S.Ct. at 1950.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."   <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).   The complaint must show an entitlement to relief with its facts.   <u>Steedley v. McBride</u>, 446 Fed.Appx. 424, 425 (3d Cir. 2011) (citing <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 2011 (3d Cir. 2009)).

## III.   DISCUSSION

### A.  Motion to Vacate an Entry of Default

The success of a motion to vacate an entry of default depends on a consideration of the following factors: (1) whether the defendant has a meritorious defense; (2) whether the plaintiff will be prejudiced; (3) whether the default was the result of the defendant's culpable conduct. <u>U.S. Currency</u>, 728 F.2d at 195.   Whether defendant has asserted a meritorious defense is the threshold issue for the court determining whether to set aside a default; it is also the threshold question for the court when determining whether to set aside a default judgment.   <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1181 (3d Cir.1984); <u>Interior Finish Contractors Ass'n of Delaware Valley v. Drywall Finishers Local Union No. 1955</u>, 625 F. Supp. 1233, 1239 (E.D. Pa. 1985).

This Court grants Bruns' Motion to Vacate the entry of default.   While the third factor clearly weighs against Defendant Bruns, he (1) asserts a meritorious defense by alleging he and

Pajik have not acted under the color of law and (2) Plaintiff will not be prejudiced because evidence will not be altered or scarce by a passage of time, and Plaintiff asserts no other potential prejudice.   Granting this motion to vacate an entry of default is consistent with the Court of Appeal's position requiring uncertain cases to be decided on the merits.

### 1.  Meritorious Defense

A meritorious defense is shown if the "allegations of defendant's answer, if established at trial, would constitute a complete defense to the action."   Interior Finish Contractors Ass'n of Delaware Valley v. Drywall Finishers Local Union No. 1955, 625 F. Supp. 1233, 1239 (E.D. Pa. 1985) (hereinafter "Interior"); U.S. Currency, 728 F.2d at 196.   The defendant's allegations must be specific, not merely "simple denials and conclusory statements."   Interior, 625 F. Supp. at 1239.

In U.S. Currency, the Court of Appeals affirmed the Third Circuit's decision to deny the defendant's motion to set aside the entry of default.   728 F.2d at 197.   The defendant was arrested with $55,518 in an attempt to purchase cocaine from government agents.   Id. at 196.   The Court ruled the plaintiff failed to allege facts, which if established at trial, would constitute a complete defense to the action.   Id. at 196.   The Court ruled this way because once property is used for the purpose of purchasing a controlled substance, the defendant had to assert that the property was not intended to be furnished by any person in exchange for a controlled substance.   Id. at 196.   The Court reasoned that the defendant, in his answer, failed to explain the source of the $55,518.   Id.

Here, Defendant Bruns established a meritorious defense.   Unlike the defendant in U.S. Currency, Defendant Bruns provides meritorious defenses by alleging facts that, if established, would constitute a complete defense to the action.   In response to the claims brought by Plaintiff,

Defendant Bruns alleges (1) that he did not violate Section 1983 because he was not acting under the color of law, but as a private individual; (2) that he did not violate Section   1985(3) because Plaintiff has not alleged a protective class; (3) he did not violate Section 1962(d) (RICO) because the complained false or misleading statements are not a violation of RICO; and (4) he did not violate Section 1030, the Federal Computer Fraud and Abuse Act, because the loss or damages described are not recoverable for Plaintiff.   These facts, if proven at trial, would constitute a complete defense to each claim.

### 2.  Prejudice to Plaintiff

In <u>Farnese v. Bagnasco</u>, the Third Circuit granted the defendant's motion to set aside an entry of default.   687 F.2d 761, 766 (3d Cir. 1982).   The plaintiff had entered an agreement with defendant to create a joint-venture that would aid Italian government entities in financing public projects.   <u>Id.</u> at 762.   To determine whether there would be prejudice to the plaintiff, the Court considered the effect that the passage of time would have on the plaintiff's case.   <u>Id.</u> at 764.   The Court reasoned that the agreement letter at issue in the case would not be less effective evidence merely because time had passed.   <u>Id.</u>

In <u>Feliciano v. Reliant Tooling Co., Ltd.</u>, the Court of Appeals set aside default judgment entered.   691 F.2d 653, 658 (3d Cir. 1982).   The plaintiff had been injured as a result of the defendant's faulty equipment.   <u>Id.</u> at 655–656.   The Third Circuit ruled that prejudice was unlikely even if the plaintiff faced delay in satisfaction of the claim and more expenses by the judgment being vacated.   <u>Id.</u> at 656–57.   Furthermore, the Court ruled that plaintiff did not allege a loss of available evidence, or a potential for coercion or fraud.   <u>Id.</u>

Presently, Defendant Bruns argues that Plaintiff will not suffer prejudice from this action.

12

(Def.'s Mot. Br. 13).   The Court agrees that Plaintiff is unlikely to suffer prejudice from this Court vacating the entry of default.   Similar to <u>Feliciano</u>, Plaintiff in this case has not alleged a loss of available evidence or a potential for coercion or fraud.   <u>See</u> 691 F.2d at 658.   Plaintiff relies on evidence that Defendant Bruns invested $10,000 dollars in the Mansion venture, that the business failure of Mansion caused Defendant Bruns and Defendant Richmond to track down Plaintiff using the NCIC, and that Defendant Pajik falsely reported Plaintiff's car stolen.   Like the letter agreement in <u>Farnese</u>, the evidence is not materially affected by the passage of time.   <u>See</u> <u>Farnese v. Bagnasco</u>, 687 F.2d 761, 766 (3d Cir. 1982).   Adequate documentation can be recovered during discovery to determine the merits of Plaintiff's claim.   For these reasons, Plaintiff is unlikely to be prejudiced by granting Defendant Bruns' Motion to Vacate an entry of default.

### 3.  Culpable Conduct

Defendant Bruns asserts that his desire to avoid unnecessary expenditures on counsel fees was reason not to respond to Plaintiff's Complaint.   Further, Defendant Bruns argues that the case appeared as though it may go away on its own because this Court dismissed Government Defendants and Plaintiff's attorney withdrew.   Lastly, Defendant Bruns argues that he reached an agreement to vacate the entry of default with Plaintiff's attorney before the attorney withdrew from representation.

In assessing whether the entry of default was caused by a defendant's culpable conduct, the courts look at factors such as whether the entry of default was caused by defendant or defendant's attorney and whether the defendant responded to the entry of default with reasonable promptness. <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1183 (3d Cir. 1984); <u>Rockwell Transp. Services, Inc. v. Int'l Printing & Envelope Co., Inc.</u>, Civ. No. 02-724, 2002 WL 1018928 (E.D. Pa. May 20, 2002)

(hereinafter "Rockwell").   In addition, more than mere negligence must be demonstrated –
willfulness and bad faith include acts intentionally designed to avoid compliance.   Hritz v. Woma
Corp., 732 F.2d at 1183.

    In Rockwell, the Third Circuit granted the defendant's motion to vacate an entry of default.
2002 WL 1018928, at *1.   To determine the third element – whether the defendant was culpable
as to the entry of default – the Court ruled that the defendant had responded with reasonable
promptness to the entry of default.   Id.   The Court reasoned that the defendant acted with
reasonable promptness by responding one month after the entry of default had been entered.   Id.

    Here, Defendant Bruns' decision to wait eight months before responding to the Court is
negligent, but it is unlikely to rise to the level of bad faith.   Still, this factor weighs against the
Court vacating the entry of default.   Unlike Rockwell, where the defendant responded one month
after the entry of default was entered, Defendant Bruns did not respond with reasonable
promptness to the entry of default.   He responded eight months after the entry of default.
Further, Defendant Bruns' non-response was due to his own conduct, not his attorney's.   This fact
weighs in favor of the defendant's culpable conduct because there is no recourse for defendant
against his attorney.   While the third factor weighs against Defendant Bruns, the fact that he
provided a meritorious defense and that there is unlikely prejudice to Plaintiff's case persuades this
Court to set aside the entry of default.   Accordingly, Defendant's Motion to Vacate entry of
default is **granted.**

**B.  Motion to Dismiss**

    Defendant Bruns moves to dismiss all of Plaintiff's federal claims, alleging: (1) that he did
not violate Section 1983 because he was not acting under the color of law, but as a private

14

individual; (2) he did not violate Section 1985(3) because Plaintiff is not of a protected class; (3) he did not violate Section 1962(d) because the conduct engaged in is not a listed violation of RICO; and (4) he did not violate Section 1030, the Federal Computer Fraud and Abuse Act, because Plaintiff does not qualify for damages available under the statute.   (Def.'s Mot. Brief).

### 1.   Section 1983 Claim

Under Section 1983, a plaintiff must prove two elements in order to recover.   Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S. Ct. 1598, 1604 (1970).   First, the plaintiff must demonstrate that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States.   Id.   Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."   Id.   The second element requires that the plaintiff show that the defendant acted "under color of law."   Id.   Accordingly, under Section 1983, the state and its officials, including state troopers, are immune from liability when acting within the scope of their official authority.   See Will v. Michigan, 491 U.S. 58, 71 (1989).   Defendant Bruns moves to dismiss this claim for a lack of the second element, specifically, that his actions taken against Plaintiff were not taken under color of law, but as a private individual.

In Mark v. Borough of Hatboro, the Third Circuit determined, that to be acting under color of state law, one must misuse a power possessed by virtue of state law, and the resulting conduct be possible only because the wrongdoer was clothed with the authority of state law.   51 F.3d 1137, 1150-51 (3d Cir. 1995); United States v. Classic, 61 S.Ct. 1031 (1941).   The Court further ruled that even acts committed by a police officer are not committed under the color of state law unless they are in some way related to the performance of police duties.   Id. at 1151.

In <u>Mark</u>, a volunteer firefighter secretly set fire to a building, telling none of his fellow firefighters.  <u>Id.</u> at 1151.   When the Plaintiff brought an action under Section 1983, the Court ruled that the volunteer firefighter was acting as a private individual, pursuing his own goals in setting the fire, while the obligation of the enterprise was to put out fires.  <u>Id.</u> at 1151.

In <u>Pomykacz v. Borough of W. Wildwood</u>, the plaintiff filed an action under Section 1983 against the mayor and a police officer.   438 F. Supp. 2d 504, 504-10 (D.N.J. 2006).   The plaintiff had begun an investigation of a police officer and mayor.   As tensions between the parties grew, the mayor and the police officer contacted the prosecutor and held a meeting to discuss the necessary elements to bring an action for stalking against the plaintiff.  <u>Id.</u> at 508–09.   After that meeting, they called a judge to obtain a warrant for the plaintiff's arrest.  <u>Id.</u> at 509.   The District Court denied summary judgment for the defendants, and ruled that the defendants were acting under the color of law.  <u>Id.</u> at 510.   The Court reasoned that private citizens do not have such ease of access to the County Prosecutor's Office or judges at any time, and certainly not after-hours. <u>Id.</u> at 509.   Further, the court found that, in a citizen's complaint of stalking or harassment, a private citizen makes a complaint to law enforcement officers who may thereafter contact the county prosecutor.  <u>Id.</u> at 510.   But, unlike average citizens, the police officer and the mayor used their authority as law enforcement officials to contact the county prosecutor directly.  <u>Id.</u>   "At the very least, they were acting simultaneously as private citizens and law enforcement officials at that time."  <u>Id.</u>

On one hand, the instant case appears to involve an individual and private matter that Defendant Bruns handled unrelated to his duty as a police officer, similar to that in <u>Mark</u>.  <u>See</u> 51 F.3d at 1151.   On the other hand, it appears Defendant Bruns used his position as a State Trooper

16

to utilize information that private citizens would not have access to in order to pursue his personal matter, much like in Pomykacz.   Pomykacz v. Borough of W. Wildwood, 438 F. Supp. 2d 504, 504-10 (D.N.J. 2006).

The facts of this case are similar to Pomykacz.   See id.   Defendant Bruns was in fact pursuing a private matter; however, Defendant Bruns seriously misconstrues the allegations made in Plaintiff's Complaint.   Defendant Bruns argues that not a single paragraph of the Complaint even remotely contends that Defendant Bruns' status as a police officer played the slightest role in the actions undertaken.   (Def.'s Mot. Br. 13).   Contrary to Defendant Bruns' statement, he managed to locate the Plaintiff using the NCIC, which he would not have had access to as a private citizen.   (Am. Compl. ¶ 29).   Further, upon reporting the Plaintiff's car stolen, Defendant Bruns informed the Arizona law enforcement that the stolen Lincoln was in their jurisdiction, and asked them to recover the vehicle.   (Am. Compl. ¶ 35).   Defendant Bruns' actions arguably would not have been granted to private citizens pursuing a similar matter.   The use of the NCIC, the contact with the Arizona officials, and their adherence to his request, afforded Defendant Bruns privileges that were granted to him only because of his official capacity as a State Trooper, as was the case for the defendants in Pomykacz.   See Pomykacz, 438 F. Supp. 2d at 504–10.   Accordingly, the Court denies Defendant Bruns' Motion to Dismiss the Section 1983 Claim.

### 2.  Section 1985(3) Claim

Under Section 1985(3), citizens can bring a cause of action for a conspiracy designed and intended to deny and deprive the plaintiff of his or her Constitutional rights.   42 U.S.C. § 1985. The plaintiff must prove: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges

and immunities under the laws; 3) an act in furtherance of the conspiracy; 4) an injury to a person or property or a deprivation of a right or privilege of a citizen of the United States; 5) that actions of the defendants were motivated by an invidiously discriminatory class-based animus. United Brotherhood of Carpenters and Joiners of Amer. Local 610 v. Scott, 463 U.S. 825, 828–29 (1971) (hereinafter "United Brotherhood"); see Schnabel v. Bldg. & Const. Trades Council of Philadelphia & Vicinity, AFL-CIO, 563 F. Supp. 1030, 1039 (E.D. Pa. 1983).

The failure to prove an element under Section 1985 is dispositive.  United Brotherhood, 463 U.S. at 834.  In United Brotherhood, the nonunion construction employee plaintiffs, as well as the owner, brought action under Section 1985(3) against the defendants.  Id. at 830.  The defendants were union members, who assaulted the plaintiffs, and burned construction equipment on a nonunion project near Port Arthur, Texas.  Id. at 827–28.  The plaintiffs brought the Section 1985 claim alleging the deprivation of their First Amendment rights not to associate with a union. Id. at 830.  The Supreme Court ruled that Section 1985(3) does not reach conspiracies motivated by economic or commercial animus.  Id. at 839.  The Court reasoned that Section 1985(3) does not amount to an action of federal tort law based on the Congressional intent, the legislative history, and the text of the statute, all which require, "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Id. at 834.

In the present case, Defendant Bruns correctly asserts that there is no class based or racial animus alleged by Plaintiff.  (Def.'s Mot. Br. 8).  Plaintiff alleges that Defendants engaged in a reckless and malicious conspiracy to harass and falsely accuse, imprison and harm Plaintiff, but does not allege a class-based animus such as race.  (Am. Compl. ¶ 73).  Like the plaintiffs in United Brotherhood, Plaintiff has alleged nothing more than an economic or commercial conflict.

Section 1985(3) was not meant to provide a federal tort action without a class-based animus. Because Plaintiff's Section 1985(3) claim shows no class-based animus or grounds for discrimination, it shall be dismissed.

### 3.  Section 1962 RICO Claim

Section 1962(d) provides, "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962. Section 1962(c) states that it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c). In H.J. Inc. v. Northwestern Bell Tel. Co., the Supreme Court held that a pattern of racketeering activity means a plaintiff or prosecutor must demonstrate at least two racketeering predicates in the past ten years, that are related and that amount to or threaten the likelihood of continued criminal activity. 492 U.S. 229, 239 (1989). Thus, to succeed on a claim under Section 1962(c), Plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C. § 1962(c). An exhaustive list of "racketeering activities" appears in 18 U.S.C. § 1961(1). United States v. Irizarry, 341 F.3d 273 (3d Cir. 2003). Defendant alleges the second and fourth prongs of a Section 1962(c) claim are not met.

The pattern of racketeering activities described in Section 1961 are, "murder, kidnapping, gambling, arson, robbery, bribery, extortion . . . ." 18 U.S.C. § 1961(1)(A). Plaintiff does not allege a violation listed, but instead claims that Defendants' fraudulent acts included material misrepresentation and omissions designed to mislead government agencies and perpetuate

fraudulent prosecutions.   Defendant Bruns argues that none of the specified crimes are applicable to this case, and Plaintiff's RICO claim alleges other state law offenses that are not under the scope of Section 1961(1).   See 18 U.S.C. § 1961(1).   The law is well settled, that without a predicate act, plaintiff cannot possibly succeed on its federal and state RICO claims.   Ideal Dairy Farms v. John Labatt, Ltd., 90 F.3d 737 (3d Cir. 1996).

In Ideal Dairy Farms, the plaintiff failed to make out a claim for wire fraud, and therefore had no recourse under Section 1962.   Id. at 747.   The plaintiff knew that defendant was not complying with a contract in dispute, and therefore the fraud claim could not be proven.   Id. Thus, without an allegation of a listed violation under Section 1961, a claim under Section 1962 could not be supported.   Id.   Here, Plaintiff does not allege any enumerated misconduct listed in Section 1961 which substantiates a pattern of racketeering activity to support a violation of Section 1962.   Accordingly, Plaintiff's claim fails, as did the claim in Ideal Dairy Farms, for a failure to demonstrate a pattern of racketeering activity.   Accordingly, Defendant's Motion to Dismiss with regards to the Section 1962 claim is granted, and Plaintiff's Section 1962 claim is dismissed.

### 4.  Section 1030 Claim

Plaintiff's Complaint alleges that: (1) Defendants knowingly and intentionally accessed the NCIC, a protected computer database authorized only to law enforcement, and through conduct unauthorized or in excess of their authority, (2) perpetuated fraudulent conduct, which resulted in a loss that threatened public health or safety.   Defendant argues that the Federal Computer Fraud and Abuse Act provides no private cause of action for Plaintiff because Plaintiff's remedy does not constitute damages listed.   (Def.'s Mot. Br. 22).

Under Section 1030, individuals face liability for unauthorized or fraudulent access to

protected computers.   18 U.S.C. § 1030.   The statute prohibits intentional unauthorized access of computer databases containing information from a department or agency of the United States.   18 U.S.C. §1030(c).   Further, Section 1030(g) limits private causes of action to any person who suffers damage or loss if the offense caused, among others, physical injury or a threat to public health or safety.   18 U.S.C. §1030(c)(4)(A)(i)(IV).   Accordingly, Plaintiff must allege: (1) that access to the particular computer database was unauthorized or in excess of such access, and (2) as a result of the unauthorized access, there was a loss or damage.   18 U.S.C. §1030.

Section 1030(e)(11) defines "loss" as, "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."   18 U.S.C. § 1030.   Based on the plain language of the statute, Plaintiff has failed to allege loss or damages under Section 1030.   Therefore, Plaintiff's Section 1030 claim is dismissed.

Thus, the Court grants Defendant's Motion to Dismiss with regards to the Section 1985, Section 1962, and Section 1030 claims.   Those claims are accordingly dismissed.   The Court denies Defendant's Motion to Dismiss with regards to the Section 1983 Claim.


IV.   **CONCLUSION**

For the foregoing reasons expressed herein, Defendant's Motion to Vacate Entry of Default is **granted**; Defendant's Motion to Dismiss is **granted** in part and **denied** in part.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        March    26 , 2013
cc:            All Counsel of Record
                Joseph A. Dickson, U.S.M.J.

21